John Mansfield, OSB No. 055390
john@MansfieldLaw.net
MansfieldLaw
121 SW Morrison Ave., Suite 400
Portland, OR  97204
971.271.8615
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **DROPZONEMS, LLC**, an Oregon LLC,<br><br>Plaintiff,<br><br>v.<br><br>**STEVEN COCKAYNE,** an individual, **NATALIE ROGERS**, an individual, **DAVID THORPE**, an individual, and **PACIFIC NORTHWEST SKYDIVING CENTER**, an Oregon LLC,<br><br>Defendants. | Case No.: 3:16-cv-2348<br><br>**PLAINTIFF DROPZONEMS, LLC'S COMPLAINT FOR COPYRIGHT INFRINGEMENT AND MISAPPROPRIATION OF TRADE SECRETS AGAINST DEFENDANTS STEVEN COCKAYNE, NATALIE ROGERS, WILLIAM THORPE, AND PACIFIC NORTHWEST SKYDIVING CENTER**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**    1

Plaintiff DropzoneMS, LLC ("Dropzone") makes this complaint against individual defendants Steven Cockayne, Natalie Rogers, and David Thorpe, and Pacific Northwest Skydiving Center, an Oregon LLC:

## INTRODUCTION

1.  Defendant Cockayne is a former member of plaintiff Dropzone. Mr. Cockayne's contribution to the LLC was enterprise software for commercial skydiving operators, known as the "DropzoneMS Software" ("DZ Software"). Dropzone's major business function was to market the DZ Software to commercial skydiving operators, as well as provide service and other related products.

2.  In January 2016, Mr. Cockayne voluntarily withdrew from Dropzone. Under documents negotiated and signed by Mr. Cockayne and other Dropzone principals, Mr. Cockayne received a cash payout for his ownership share. In return, Mr. Cockayne agreed to return all Dropzone software code and hardware, including all intellectual property rights, to Dropzone.

3.  Mr. Cockayne has not stopped using or returned the DZ Software code to Dropzone. In fact, he is has provided the DZ Software code to Pacific Northwest Skydiving Center ("PNSC"), one of Dropzone's former clients, which is using it in its business. On information and belief, PNSC and its principals Mr. Thorpe and Ms. Rodgers have knowingly helped Mr. Cockayne to commit the acts of copyright infringement and trade secret misappropriate that are the basis of this lawsuit.

4.  The market for the DZ Software, commercial skydiving operators, is small. Unless this Court stops Mr. Cockayne from using Dropzone's copyrighted software immediately, it is likely that he can corner the market and make it impossible for Dropzone to compete against its own product. Dropzone asks this Court to enjoin defendants from using or distributing the DZ Software, and to award damages for defendants' illegal infringement and misappropriation.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**A.    Jurisdiction and Venue**

5.    This Court has original subject matter jurisdiction under 28 U.S.C. § 1338 for the copyright and federal trade secret claims, and supplemental jurisdiction under 28 U.S.C. § 1367(a) for the state law trade secrets claims.

6.    This Court has general and specific personal jurisdiction over all defendants because they reside in this district, and have infringed Dropzone's copyrights and misappropriated Dropzone's trade secrets in this district.

7.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

**B.    Parties**

8.    Plaintiff Dropzone is an Oregon limited liability company.

9.    Defendant Cockayne is an individual who, on information and belief, resides in this district.

10.   Defendant PNSC is an Oregon limited liability company

11.   On information and belief: Mr. Thorpe and Ms. Rogers are individuals who reside in this district. Mr. Thorpe and Ms. Rogers are principal and/or supervisory employees of PNSC and they personally authorized, participated in or directed the infringing acts that led to this complaint. On information and belief, Mr. Thorpe and Ms. Rogers had the right and ability to supervise or control the alleged infringing activity, and have a direct financial interest in this activity. In addition to or alternatively, Mr. Thorpe and Ms. Rogers knew or should have known of the infringing activity, and took actions that contributed to the activity.

## FACTS

12.   Dropzone filed articles of organization with the Oregon Secretary of State on May 11, 2015, and the members entered into an operating agreement dated May 12, 2015. A restated operating agreement ("Operating Agreement") was signed on October 12, 2015.

13. Among other things, the Operating Agreement provided for the amount and form of the initial contributions of the members. Mr. Cockayne's sole contribution was "Intellectual Property: Software valued at $70,000.00."

14. The software that Mr. Cockayne contributed to Dropzone is the "DropzoneMS Software," referred to in this complaint as the "DZ Software." The DZ Software is a cross-compatible platform for skydiving businesses, which runs in the Google Chrome browser. It contains various modules allowing commercial operators to maintain customer information, keep track of inventory, manage plane setup, create manifests, set prices, take reservations, manage the jumper queue, keep track of expenses, and keep track of waivers.

15. The DZ software contains highly confidential trade secrets. Dropzone has kept the software source code, which is the only human-readable evidence of the software, in password-protected storage and has not disclosed it outside of the company.

16. The DZ Software source code derives independent economic value, actual or potential, from being kept secret. If the source code were publically available, any skydiving operator could obtain it and would not need to buy the DZ Software from Dropzone.

17. As transferee of the DZ software from Mr. Cockayne by written agreement, Dropzone completed filing a U.S. copyright registration for the DZ Software, case number 1-4251951271, on December 13, 2016. The filing included a notification that the software contained trade secrets.

18. On or about January 14, 2016, Mr. Cockayne met with several of the other members of Dropzone to discuss his desire to withdraw from Dropzone. In a document entitled "Withdrawal of Partner [sic]" ("Withdrawal"), the parties set out the terms of Mr. Cockayne's voluntary separation from the LLC. The Withdrawal was signed by Mr. Cockayne, as well as members Alex Togstad, Kyle Williams, and Timothy Noonan, dated January 15, 2016.

19. The major consideration flowing to Mr. Cockayne was a cash payment of $1,000, and a release from his obligations under the Operating Agreement, effective January 14, 2016.

Mr. Cockayne also received Dropzone's promise that it would file all legal papers necessary to effect Mr. Cockayne's withdrawal from the LLC.

20. In return, Mr. Cockayne agreed to the following material terms:

- Mr. Cockayne would return all Dropzone property in his custody, possession or control by January 21, 2016.
- The Withdrawal specified the Dropzone property that Mr. Cockayne agreed to return: "All software, development, production, marketing material, documents, software credentials, and intellectual property for DropzoneMS shall be returned to Alex Togstad via email. Computer hardware, company cell phone…shall be returned to Alex Togstad…."
- In the Withdrawal, Mr. Cockayne also agrees not to disparage Dropzone employees, products or services.

21. Dropzone has performed all of its duties under the Withdrawal. Mr. Cockayne has not.

22. In particular, on information and belief: Mr. Cockayne has kept copies of the source code to DZ Software. He has provided the DZ Software to PNSC, which is using it to run its skydiving business. Examples of the customer-facing interface provided by the DZ Software can be seen on the PNSC website, https://www.pnwskydiving.com, enabling online reservations and gift certificates, among other things. Mr. Cockayne has also made unauthorized derivative works from the software by modifying the source code.

23. On information and belief, Mr. Cockayne is or is planning to market the DZ Software to other commercial skydiving operators, including Skydive Awesome. Because the software is easy to use and specially designed for the skydiving business, Mr. Cockayne may well gain control of the market if he continues to market the software. There is a strong tendency for business people such as skydiving operators to stay with software in which they have invested time and money, and it is difficult to regain market share once operators have already adopted an enterprise solution such as the DZ Software.

24. Defendants' use of Dropzone's trade secrets and copyrighted software has also injured Dropzone by lost sales and upgrades, among other things.

## FIRST CLAIM FOR RELIEF

### (Federal Defend Trade Secrets Act, 18 U.S.C. § 2836)

25. Dropzone incorporates all numbered paragraphs set forth above.

26. Dropzone has offered for sale or sold the DZ Software in interstate commerce.

27. Dropzone's trade secrets embodied in the DZ Software derive independent economic value, actual or potential, from not being generally known or readily ascertainable through appropriate means by other persons who might obtain economic value from their disclosure or use.

28. Dropzone has made reasonable efforts under the circumstances to maintain the secrecy of these trade secrets.

29. Defendant Cockayne has misappropriated Dropzone's trade secrets by disclosing them to third parties, including defendants Rogers, Thorpe, and PNSC, knowing that these third parties would use these trade secrets for their own economic benefit and to Dropzone's detriment. Defendant Cockayne knew that he had no permission to disclose or otherwise use Dropzone's trade secret designs other than in Dropzone's interests. Defendant Cockayne's disclosure was improper because he owed Dropzone a duty of loyalty and care under state law, and because he was contractually required to turn over all copies of the software within seven days after he withdrew from Dropzone.

30. On information and belief, defendants Rogers, Thorpe, and PNSC knew or should have known that Cockayne was under a duty not to disclose the DZ Software. Accordingly, their use of the Dropzone software received from Cockayne was an improper misappropriation.

31. Defendants' use and disclosure of the DZ Software has and will irreparably harm Dropzone, some of which harm cannot be adequately compensated by remedies at law. The balance of equities favors an equitable remedy, and the public interest would not be disserved by an injunction.

32. To the extent Dropzone's harms may be compensated by legal remedies, Dropzone is entitled to recover damages from Defendants in an amount to be determined at law.

## SECOND CLAIM FOR RELIEF

### (Oregon Uniform Trade Secrets Act, ORS 646.461–646.475)

33. Dropzone incorporates all numbered paragraphs set forth above.

34. Dropzone's trade secrets embodied in the DZ Software derive independent economic value, actual or potential, from not being generally known to or readily ascertainable through appropriate means by other persons who might obtain economic value from their disclosure or use.

35. Dropzone has made reasonable efforts under the circumstances to maintain the secrecy of these trade secret designs.

36. Defendant Cockayne has misappropriated Dropzone's trade secrets by disclosing them to third parties, including defendants Rogers, Thorpe, and PNSC, knowing that these third parties would use these trade secrets for their own economic benefit and to Dropzone's detriment. Defendant Cockayne knew that he had no permission to disclose or otherwise use Dropzone's trade secrets other than in Dropzone's interests. Defendant Cockayne's disclosure was improper because he owed Dropzone a duty of loyalty and care under state law, and because he was contractually required to turn over all copies of the software.

37. On information and belief, defendants Rogers, Thorpe, and PNSC knew or should have known that Cockayne was under a duty not to disclose the DZ Software. Accordingly, their use of the Dropzone software received from Cockayne was an improper misappropriation.

38. Defendants' use and disclosure of the DZ Software has and will irreparably harm Dropzone, some of which harm cannot be adequately compensated by remedies at law. The balance of equities favors an equitable remedy, and the public interest would not be disserved by an injunction.

39. To the extent Dropzone's harms may be compensated by legal remedies, Dropzone is entitled to recover damages from Defendants in an amount to be determined at law.

## THIRD CLAIM FOR RELIEF

### (Copyright Infringement 17 U.S.C. § 501)

40. Dropzone repeats all of the allegations made above.

41. Dropzone has filed a complete U.S. copyright registration for the DZ Software.

42. Defendants, without authorization from Dropzone, have manufactured, distributed, supplied, advertised, promoted, 0sold, and/or offered for sale the DZ Software.

43. Defendants, without authorization from Dropzone, have made derivative works from the DZ Software.

44. Defendants have, after receiving notification of the infringement, willfully infringed and are continuing to willfully infringe Dropzone's copyright.

45. Upon information and belief, by their acts, the defendants have made and will make profits and gains to which they are not in law or in equity entitled.

46. Upon information and belief, the defendants intend to continue their willful conduct and will continue to willfully infringe Dropzone's copyright, and to act in bad faith, unless restrained by this Court.

47. As a result of the defendants' conduct, Dropzone has suffered irreparable injury and damage to its business and/or property, and other statutory or real damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Dropzone requests the following relief:

a. That the Court preliminarily and permanently enjoin defendants, their officers, agents, servants, employees, investors, shareholders and attorneys from further using, disclosing, or misappropriating the Dropzone trade secret designs;

b. That the Court preliminarily and permanently enjoin defendants, their officers, agents, servants, employees, investors, shareholders and attorneys from further

reproducing, preparing derivative works from, distributing, or displaying Dropzone's copyrighted software

c. That the Court declare this to be an exceptional case;

d. That the Court award to Dropzone all statutory and actual damages under applicable laws;

e. That the Court award to Dropzone damages on the basis of defendant's willful, malicious and intentional conduct;

f. That the Court award Dropzone its reasonable attorneys' fees and costs;

g. That Dropzone have all further relief, as the Court may deem just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Dropzone demands trial by jury on all claims and issues that may be tried to a jury.

Respectfully submitted this 20th day of December,

/s/ John Mansfield
MANSFIELDLAW

Counsel for plaintiff Dropzone